# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Terry Sandvik,

Plaintiff,

Civ. No. 04-1057 (RHK/AJB)
**MEMORANDUM OPINION AND ORDER**

v.

United Rentals (North America), Inc.,

Defendant.

Douglas A. Hedin, Hedin, Goldberg, & Glidden, PA, Minneapolis, Minnesota, for Plaintiff.

Marko J. Mrkonich and Jacy Rubin Grais, Littler Mendelson, Minneapolis, Minnesota, for Defendant.

## Introduction

This is an employment discrimination case. Plaintiff Terry Sandvik has worked for Defendant United Rentals (North America) Inc. since 1999. She alleges that she was paid less for doing substantially equal work as male counterparts, was denied a promotion or reclassification on the basis of her sex, and was retaliated against for complaining about discrimination. United Rentals has moved for summary judgment on all claims. For the reasons set forth below, the Court will grant United Rentals's Motion and will dismiss Ms. Sandvik's Complaint.

## Background

United Rentals rents construction equipment.  In November 1999, Ms. Sandvik joined United Rentals as a rental agent at its St. Michael, Minnesota, branch.  (Sandvik Dep. Tr. at 13-15.)  As a rental agent, she was generally responsible for processing sales calls, coordinating delivery of equipment to customers, and performing related administrative duties.  (See id. at 86, Ex. 3.)

Ms. Sandvik's initial supervisor was Keith Mozey, United Rentals's Operations Manager.  (Id. at 15.)  Mr. Mozey joined United Rentals in 1996 and his duties and responsibilities as Operations Manager were:

- making hiring recommendations
- monitoring inventory
- coordinating the ordering and receiving of new equipment
- supervising counter personnel and drivers
- establishing new rental accounts
- interviewing job applicants
- training new sales coordinators and branch staff
- dispatching deliveries and collection of equipment
- controlling costs, approving invoices for payment, and monitoring customer payments
- conducting weekly sales meetings with outside sales staff
- overseeing yard personnel
- training and supervising shop manager
- conducting rate analyses for customers
- assessing and preparing budgets for the operations department and branch personnel

(Mozey Dep. Tr. at 5-6, 14-24; Pringle Aff. ¶ 5.)  In 2000, Mr. Mozey received an annual base salary of $40,753 and a total compensation of $60,010.06.  (Pringle Aff. ¶ 5.)  In December 2000, Mr. Mozey left the St. Michael's branch to become the Branch Manager of the Rochester, Minnesota, branch.  (Id.; Mosey Dep. Tr. at 17.)

After Mr. Mozey's transfer to Rochester, Ms. Sandvik reported to Preston Otness, the Assistant Branch Manager.  (Sandvik Dep. Tr. at 27-30.)  Mr. Otness had been Assistant Branch Manager since 1989 and his job duties and responsibilities were:

- overseeing sales efforts and business initiatives
- preparing reports, including profit and loss reviews, monthly operating reviews, and yearly budgets
- managing personnel matters
- overseeing safety matters, including audits, safety training, OSHA compliance, Department of Transportation regulations, and drug and alcohol testing
- monitoring inventory
- coordinating activities between departments

(Pringle Aff. ¶¶ 3, 4.)  In 2002, Mr. Otness received an annual base salary of $50,233.15 and a total compensation of $63,218.40.  (Id. ¶ 4.)  Ms. Sandvik reported to Mr. Otness from December 2000 until June 2001; she then reported directly to Branch Manager Mark Pringle.  (Pringle Aff. ¶¶ 1, 6; Sandvik Dep. Tr. at 30-31.)

In February 2002, Ms. Sandvik was promoted to Senior Sales Coordinator.  (See Sandvik Dep. Tr. at 37-38.)  Her job duties and responsibilities were:

- establishing new rental sales accounts by serving walk-in customers and call-in customers
- processing rental quotations, reservations, contracts, and invoices
- educating customers about the proper use of equipment
- checking out and demonstrating equipment for customers as needed
- assisting customers with the loading and unloading of equipment
- ensuring the accuracy of all contract-related information entered into the branch's computer system
- coordinating and tracking equipment pickups and returns with the branch dispatcher
- running all reports necessary to monitor equipment and facilitate operations
- maintaining a clean and presentable showroom, sufficiently stocked with properly priced merchandise

- coordinating with all inside and outside branch staff to ensure customer satisfaction
- assisting in training new sales coordinators
- supervising drivers and completing performance reviews
- supervising rental personnel and completing performance reviews
- on call nights and weekends

(Sandvik Dep. Tr. at 31-32, 92-93, Ex. 9.)  Under United Rentals' pay structure, a Senior Sales Coordinator is a "salary band" "11N" with a salary range of $29,000 to $39,200. (Dian Aff. Ex. B.)  In 2002, Ms. Sandvik's total compensation was $52,811.  (Pringle Aff. ¶ 6, Ex. A.)

In June 2003, Mr. Otness transferred to United Rentals's Brainerd, Minnesota, branch.  (Pringle Aff. ¶ 3.)  On the day of Mr. Otness's transfer, United Rentals's Branch Manager, Mark Pringle, recommended Ms. Sandvik for a promotion to Assistant Branch Manager.  (See Pringle Dep. Tr. at 11-12, Ex. 3.)  Under United Rentals' pay structure, an Assistant Branch Manager is a "salary band" "7E" with a salary range of $43,100 to $58,200.  (Dian Aff. Ex. B.)  Mr. Pringle testified that he did not have the authority to promote, but could only recommend a promotion.  (Pringle Dep. Tr. at 12.)  Upper management did not reply to Mr. Pringle's recommendation, however, and Ms. Sandvik was not promoted.  (See id. at 16.)  Later, in September 2003, United Rentals interviewed three men for the Assistant Branch Manager position, but the position was never filled.  (Sandvik Dep. Tr. at 78-79.)[1]

---

[1] Ms. Sandvik also testified that Mr. Pringle recommended her for a promotion to Assistant Branch Manager in June 2001.  (See Sandvik Dep. Tr. at 30, 34-35.)  There is some question, however, whether this occurred in June 2001 because she supports her

On July 22 or 23, 2003, Ms. Sandvik learned of a "secret pact" between the St. Michael branch and three other United Rentals branches whereby these branches agreed not to share their rental equipment with other branches.  (See Sandvik Dep. Tr. 44-46, Ex. 17.)  Ms. Sandvik told Mr. Mozey that she thought the secret pact was not a good idea.  (Id. at 46, 110-11, Ex. 17.)  She also privately felt that the pact was unethical.  (Id. Ex. 17.)  She believes that Mr. Pringle found out what she thought.  (See id.)

On July 23, 2003, Ms. Sandvik was placed on paid leave for three days.  (Id. at 108.)  United Rentals contends that she was placed on leave because of behavior problems, such as staring out windows, verbal outbursts, and crying.  It put her on leave to allow her to take advantage of the company's Employee Assistance Program.  (See Pringle Aff. ¶¶ 8-10; Albers Dep. Tr. at 10, 21-22.)  Mr. Pringle told Ms. Sandvik that she was on leave because he was worried about her behavior, excessive overtime hours, turning down rentals, and an incident where she "overreacted" to a driver's comment about using kittens for fishing bait.  (Sandvik Dep. Tr. at 43-44, 47, 108-10.)  Although Ms. Sandvik concedes that she was under stress, she denies that her behavior was a problem.  (Id. at 49, 102-05.)  She contends that she was "suspen[ded]" from work because, in part, she objected to the St. Michael branch's secret pact not to share rental equipment with other branches.  (See id. at 110-11, Ex. 17.)

---

testimony by referring to the June 2003 promotion request.  (See id. at 34.)  But assuming she was recommended for promotion in June 2001, her claim fails for the same reason her failure-to-promote claim for the June 2003 promotion fails.  See infra Analysis Part B.

On July 28, 2003, Ms. Sandvik wrote a memorandum disputing the purported reasons for her "suspension" and addressing what she thought was the "real reason" behind it.  (Sandvik Dep. Tr. Exs. 16, 17.)  Among other things, she reiterated her objection to the secret pact, she noted an occasion when she questioned Mr. Pringle's decision to rent a piece of equipment, and stated that she "was sure the fact that I was going against [Mr. Pringle's] will is one of the real reasons I was suspended."  (Id. Ex. 17.)

In her July 28th memorandum, she also raised the issue of her job title:

> Another issue I would like to see addressed is the issue of my job title.
> When Keith Mozey was doing my job his job title was "Operations Manager."
> When Preston Otness was doing my job his job title was "Assistant Branch
> Manager."  My job title is "Senior Sales Coordinator."  I have not been
> promoted and have not been treated the same as others doing the same job I
> am.  I believe this is called discrimination.

(Id.)

After returning to work, Ms. Sandvik testified that she was "stripped of all [her] job duties" and only answered the telephone.  (Sandvik Dep. Tr. at 58-59.)  She also testified that she was "repeatedly humiliated" by Mr. Pringle, who would ignore her or talk about her in her presence as if she was not there.  (Id. at 59.)  She further testified that Mr. Pringle commented on the "stupidity of women" and called men "ladies" as a put-down.  (Id. at 60.)  He also once remarked, while talking to another person but looking at Ms. Sandvik, "Why should I pay for milk when I have the cow for free."  (Id. at 59.)  Although Ms. Sandvik does not know the context for this remark (id.), she contends that he meant why should he pay her to be a manager when she does the work for nothing (id. at 61).

6

On August 6, 2003, United Rentals's Regional Human Resources Manager, Mike

Albers, met with Ms. Sandvik and Mr. Pringle to investigate Ms. Sandvik's concerns raised

in her July 28th memorandum.  (See Albers Dep. Tr. at 14-20.)  On August 12, 2003, Ms.

Sandvik emailed Mr. Albers claiming that she had not been paid for all her work hours.

(Sandvik Dep. Tr. at 120, Ex. 21.)

On September 8, 2003, Ms. Sandvik filed a Charge of Discrimination with the Equal

Employment Opportunity Commission and Minnesota Department of Human Rights.

(Compl. Ex. A.)  She alleged violations of the equal pay laws, sex discrimination, and

retaliation.  (Id.)  She wrote:

> I.  STATEMENT OF PERSONAL HARM: I was hired by Respondent on
> November 1, 1999, as Senior Sales Coordinator.  My current hourly wage is
> $16.87.  During my employment at United Rentals, Inc., I have been
> discriminated against on the basis of my sex, female, in the area of
> compensation.  I was consistently paid less than my two male predecessors,
> Keith Mozey and Preston Otness, even though our job responsibilities were
> substantially identical, in violation of Title VII, the Federal Equal Pay Act.
> They were salaried, I am hourly.  Both of my male predecessors were paid on
> a salary basis and had different titles, Operations Manager and Assistant
> Branch Manager respectively, however, my job duties are substantially
> identical to theirs.  Finally, I have also been denied profit sharing, bonuses,
> overtime, promotions and promotional opportunities on the basis of my sex
> and subjected to retaliation after I objected to the discriminatory actions of
> respondent, in violation of Title VII, the Minnesota Human Rights Act, and
> the Minnesota Equal Pay For Equal Work Act.
>
> II.  REASONS FOR ADVERSE ACTION: I was given no reason for
> respondent's disparate treatment of me.
>
> III.  STATEMENT OF DISCRIMINATION: I believe United Rentals, Inc. has
> discriminated against me on the basis of my sex, female, in violation of Title
> VII of the Civil Rights Act of 1964 . . . as amended by the Civil Rights Act of

1991, the Federal Equal Pay Act, the Minnesota Human Rights Act, and the
Minnesota Equal Pay For Equal Work Act.

(Id.)[2]

On September 29, 2003, Mr. Pringle placed the first of two negative notes in Ms.

Sandvik's personnel file.  The first note stated that Ms. Sandvik's attitude was "disruptive":

> I would like to make note of Terry's attitude.  Today we had a picnic lunch for
> all employees.  Steak, chicken and all the fixings that go with a picnic were
> offered to all employees.  Terry was adamant in her non-participation.
> Making comments like "I wouldn't eat here!"  This attitude is very disruptive
> and it affects the overall moral[e] in her department.  It is hard for co-
> workers to enjoy themselves in this situation.

(Pringle Dep. Ex. 6.)  The second note, dated October 1, 2003, stated that Ms. Sandvik had a

"negative attitude":

> A note for file regarding Terry's attitude.  We are coming up to the time of
> the year for inventory. [An employee] brought it to my attention that he made
> a comment to Terry Sandvik about the machine count for inventory and who
> was going to do it.  Terry replied, in a spiteful manner, that she didn't care and
> that she'd been demoted so it wasn't her concern.
>
> In my opinion this again is another display of negative attitude.  This seems to
> be the daily attitude of Terry.  It is disruptive and makes for a difficult
> environment for others to work in.

(Id. Ex. 7.)

On February 24, 2004, Ms. Sandvik filed this action alleging (1) a violation of the

Equal Pay Act; (2) sex discrimination in violation of Title VII and the Minnesota Human

--------

[2] On December 15, 2003, the EEOC issued her a Notice of Right to Sue letter.
(Compl. Ex. B.)

Rights Act; (3) retaliation in violation of Title VII and the Minnesota Human Rights Act;

and (4) unpaid overtime wages in violation of the Fair Labor Standards Act.[3]

On July 6, 2004, after this action had commenced, Ms. Sandvik transferred to

United Rentals's Rogers, Minnesota, branch. (Sandvik Dep. Tr. at 58.) The transfer came at

the suggestion of United Rentals's District Manager, Allen Bower, who told Ms. Sandvik

she was a valuable employee that United Rentals did not want to lose. (Id. at 83.) Ms.

Sandvik felt she was treated fairly during the transfer; she is pleased with her current

position and has no plans to work elsewhere. (Id. at 58, 84.)

United Rentals's summary judgment motion followed.

### Standard of Review

Summary judgment is proper if, drawing all reasonable inferences favorable to the

nonmoving party, there is no genuine issue as to any material fact and the moving party is

entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477

U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

The moving party bears the burden of showing that the material facts in the case are

undisputed. See Celotex, 477 U.S. at 322; Mems v. City of St. Paul, Dep't of Fire & Safety

---

[3] United Rentals observed, both in its reply memorandum and at oral argument, that
Ms. Sandvik offers no opposition to United Rentals' Motion on her Fair Labor Standards
Act overtime wage claim. Ms. Sandvik's counsel did nothing at oral argument to dispute
this observation. The Court finds that Ms. Sandvik has clearly waived her Fair Labor
Standards Act claim because she has not responded to United Rentals's Motion. See
Graham v. Rosemount, Inc., 40 F. Supp. 2d 1093, 1101 (D. Minn. 1999). Accordingly, the
Court will dismiss this claim and will not address it below.

Servs., 224 F.3d 735, 738 (8th Cir. 2000).  The court must view the evidence, and the

inferences that may be reasonably drawn from it, in the light most favorable to the

nonmoving party.  See Graves v. Arkansas Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th

Cir. 2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997).  The

nonmoving party may not rest on mere allegations or denials, but must show through the

presentation of admissible evidence that specific facts exist creating a genuine issue for

trial.  See Anderson, 477 U.S. at 256; Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th

Cir. 1995).

## Analysis

It appears from Ms. Sandvik's Memorandum of Law In Opposition that she alleges

four "intertwined and overlap[ping]" claims.  (Mem. in Opp'n at 20.)  First, she claims that

she was paid less than Mr. Mozey and Mr. Otness for substantially equal work in violation

of the Equal Pay Act.  (See id. at 4, 31.)  Second, she claims that she was not promoted to

Assistant Branch Manager, even though she did the work required of that position, in

violation of Title VII and the Minnesota Human Rights Act ("MHRA").  (See id. at 2, 20.)

Third, she alleges that United Rentals "discriminatorily failed to reclassify her to an E7"

position.  (Id. at 20.)  Finally, she claims that in retaliation for her complaints about

reclassification and wage discrimination, "secret notes" were placed in her file and she was

denied promotion or reclassification.  (See id. 1, 20, 26.)  The Court will examine each

claim in turn.[4]

### A.      Wage Discrimination

To establish a prima facie case of wage discrimination under the Equal Pay Act, Ms.

Sandvik must show that United Rentals discriminated against her on the basis of sex by

paying different wages to employees of the opposite sex "for equal work on jobs the

performance of which requires equal skill, effort, and responsibility, and which are

performed under similar work conditions."  29 U.S.C. § 206(d)(1); see Horn v. Univ. of

Minnesota, 362 F.3d 1042, 1045 (8th Cir. 2004).[5]

---

[4] Ms. Sandvik alleged in her Charge of Discrimination that she was denied profit
sharing.  (Compl. Ex. A.)  But she does not pursue this claim in her memorandum and she
could not identify any profit sharing that she was denied.  (See Sandvik Dep. Tr. at 72.)
Additionally, as United Rentals points out, Ms. Sandvik testified that she lost long-term
disability benefits after becoming a Senior Sales Coordinator.  (See Mem. in Supp. at 18
(citing Sandvik Dep. Tr. at 38).)  But she also does not pursue this claim in her
memorandum and she attributes the loss of disability benefits to her job change, not
unlawful discrimination.  (See Sandvik Dep. Tr. at 37-38.)

[5] The Equal Pay Act, 29 U.S.C. § 206(d)(1), provides, in relevant part:

No employer having employees subject to any provisions of this section shall
discriminate . . . between employees on the basis of sex by paying wages to
employees . . . at a rate less than the rate at which he pays wages to
employees of the opposite sex . . . for equal work on jobs the performance of
which requires equal skill, effort, and responsibility, and which are
performed under similar working conditions, except where such payment is
made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system
which measures earnings by quantity or quality of production; or (iv) a
differential based on any other factor other than sex.

Title VII wage discrimination claims based on unequal pay for equal work are analyzed
under the Equal Pay Act standards.  See Horn, 362 F.3d at 1045; Tenkku v. Normandy Bank,

It is undisputed that Ms. Sandvik was paid less than Mr. Mozey and Mr. Otness. Thus, Ms. Sandvik must come forward with evidence that her job was "substantially equal" to Mr. Mozey's and Mr. Otness's jobs in order to survive summary judgment.  <u>Horn</u>, 362 F.3d at 1045 (citation and internal quotations omitted).

> Whether two jobs are substantially equal requires a practical judgment on the basis of all the facts and circumstances of a particular case, including factors such as level of experience, training, education, ability, effort, and responsibility.  Application of the Equal Pay Act depends not on job titles or classifications but on the actual requirements and performance of the job.  In all cases, therefore, a court must compare the jobs in question in light of the full factual situation and the broad remedial purpose of the statute.

<u>Id.</u> (citation omitted).

Ms. Sandvik has failed to establish a prima facie case because she has not shown that her job was substantially equal to Mr. Mozey's job or Mr. Otness's job.  Her claim is supported only by her own conclusory testimony.  For example, she baldly testified that she did "the same job that Keith Mozey did and Preston Otness did."  (Sandvik Dep. Tr. at 33.) She came to this conclusion because she was "sitting in the same office with them everyday."  (<u>Id.</u>)  She admits, however, that she "wasn't privy to private conversations" between the two men and Mr. Pringle, and that she had no knowledge of other responsibilities they were given.  (<u>Id.</u> at 33-34.)  For another example, she testified that the jobs where substantially equal based upon "[m]y personal observation what I was doing and what they had done."  (<u>Id.</u> at 70.)  But conclusory allegations that the jobs are substantially

---

348 F.3d 737, 741 (8th Cir. 2003).

equal does not establish a prima facie case under the Equal Pay Act.  See Younts v. Fremont County, 370 F.3d 748, 753 (8th Cir. 2004); Sowell v. Alumina Ceramics, Inc., 251 F.3d 678, 683-84 (8th Cir. 2001); Berg v. Norand Corp., 169 F.3d 1140, 1146 (8th Cir. 1999).

Furthermore, Ms. Sandvik has done nothing to refute United Rentals's evidence showing her job was not substantially equal to Mr. Mozey's and Mr. Otness's jobs.  United Rentals has submitted evidence that Mr. Mozey's job duties and responsibilities include making hiring recommendations, coordinating the ordering and receiving of new equipment, interviewing job applicants, training new sales coordinators and branch staff, controlling costs, approving invoices for payment, and monitoring customer payments, conducting weekly sales meetings with outside sales staff, conducting rate analyses for customers, and assessing and preparing budgets for the operations department and branch personnel.  (Mozey Dep. Tr. at 5-6, 14-24.)  Likewise, United Rentals has submitted evidence that Mr. Otness's job duties and responsibilities include preparing reports, including profit and loss reviews, monthly operating reviews, and yearly budgets, and overseeing safety matters, including audits, safety training, OSHA compliance, Department of Transportation regulations, and drug and alcohol testing.  (Pringle Aff. ¶ 4.)

Ms. Sandvik's job duties and responsibilities, however, do not include any of the above duties or responsibilities.  Mr. Mozey's and Mr. Otness's duties required skills, effort, and responsibilities that are distinct from those required by Ms. Sandvik's duties. Because the jobs required different types and degrees of skill and responsibility, they are not "substantially equal" as required by the Equal Pay Act.  See Horn, 362 F.3d at 1046.

Accordingly, the Court will grant United Rentals's Motion and will dismiss Ms. Sandvik's Equal Pay Act claim.

Had Ms. Sandvik established a prima facie case under the Equal Pay Act, the burden would have shifted to United Rentals to establish one of the affirmative defenses set forth under the Act.[6] Taylor v. White, 321 F.3d 710, 715 (8th Cir. 2003). The last of the statutory affirmative defenses is a catch-all provision that excuses pay discrepancies "based on any other factor other than sex . . . ." 29 U.S.C. § 206(d)(1)(iv); see Taylor, 321 F.3d at 715. United Rentals has demonstrated that the pay discrepancies are explained by Mr. Mozey's and Mr. Otness's relative length of service and experience. By 2002, the year Ms. Sandvik was made a Senior Sales Coordinator, Mr. Mozey had worked for United Rentals for six years and Mr. Otness for thirteen years, while Ms. Sandvik had worked for United Rentals for only three years. Salary differentials based on experience and length of service are factors other than sex recognized by the Equal Pay Act. See Hutchins v. Int'l Bhd. of Teamsters, 177 F.3d 1076, 1081-82 (8th Cir. 1999).

**B.     Failure-To-Promote**

---

[6] Contrary to Ms. Sandvik's view, United Rentals did not waive its Equal Pay Act affirmative defense. Under the Federal Rules of Civil Procedure, "[i]n a pleading to a preceding pleading, a party shall set forth affirmatively . . . [any] matter constituting an avoidance or affirmative defense." Fed. R. Civ. P. 8(c). Such defenses should be set forth in "short and plain terms," and should be "simple, concise, and direct." Fed. R. Civ. P. 8(b), (e). United Rentals's Answer satisfies the notice requirements of Rule 8. It alleges: "Plaintiff's Complaint is barred because any employment decisions about which Plaintiff complains were based on legitimate, nonretaliatory, nondiscriminatory business reasons and not on any retaliatory, discriminatory, or unlawful animus." (Answer ¶ 41.)

With respect to her failure-to-promote claim, Ms. Sandvik has presented no direct evidence of intentional sex discrimination; rather, she bases her claim on circumstantial evidence.[7]   As a result, the Court applies the <u>McDonnell</u> <u>Douglas</u> three-part burden-shifting framework.   <u>See, e.g.</u>, <u>Kratzer v. Rockwell Collins, Inc.</u>, 398 F.3d 1040, 1045-46 (8th Cir. 2005).

Under <u>McDonnell</u> <u>Douglas</u>, Ms. Sandvik must first establish a prima facie case of sex discrimination.   <u>Id.</u> at 1046.   To establish a prima facie case of discrimination in a failure-to-promote case under Title VII or the MHRA,[8] Ms. Sandvik must show that (1) she is a member of a protected group; (2) she was qualified and applied for a promotion to an available position; (3) she was rejected; and (4) similarly situated employees, not part of

---

[7] In an apparent attempt to demonstrate direct evidence of discrimination, Ms. Sandvik relies on the following: (1) Mr. Pringle's comment on the "stupidity of women"; (2) his calling men "ladies" as a put down; (3) his statement, "Why should I pay for milk when I have the cow for free?"; and (4) allegations made in a Charge of Discrimination filed by a former United Rentals employee in July 2000 accusing Mr. Pringle of making sexually derogatory remarks about women.   (<u>See</u> Mem. in Opp'n at 22-25 (citing Sandvik Dep. Tr. at 58-61 and Dian Aff. Ex. G).)   However, these statements do not constitute direct evidence of discrimination because they are either stray remarks in the workplace, statements by a nondecisionmaker, or, assuming Mr. Pringle is a decisionmaker, remarks by a decisionmaker unrelated to the decisional process.   <u>See</u> <u>Mohr v. Dustrol, Inc.</u>, 306 F.3d 636, 641 (8th Cir. 2002), overruled on other grounds by <u>Desert Palace, Inc. v. Costa</u>, 539 U.S. 90 (2003).   Furthermore, the remarks complained of in the July 2000 Charge of Discrimination were made at least two years before the alleged adverse employment actions were taken against Ms. Sandvik, and Ms. Sandvik has not presented evidence establishing a causal link between the remarks and the actions.   <u>See</u> <u>Simmons v. Oce-USA, Inc.</u>, 174 F.3d 913, 916 (8th Cir. 1999).

[8] Whether brought under Title VII or the MHRA, Ms. Sandvik's claim is subject to the same legal analysis.   <u>See</u> <u>Fletcher v. St. Paul Pioneer Press</u>, 589 N.W.2d 96, 101 (Minn. 1999); <u>Cronquist v. City of Minneapolis</u>, 237 F.3d 920, 926 (8th Cir. 2001).

the protected group, were promoted instead. Id.; Younts, 370 F.3d at 754.  Once Ms.

Sandvik makes a prima facie showing, United Rentals must proffer a legitimate,

nondiscriminatory reason for the adverse action.  Kratzer, 398 F.3d at 1046.  If United

Rentals meets its burden, Ms. Sandvik must establish that "the defendant's proffered reason

is pretextual and that intentional discrimination was the true reason for the defendant's

actions."  Id. (citation and internal quotations omitted).

     Ms. Sandvik has failed to establish a prima facie case because she has not shown that

similarly situated male employees were promoted instead of her.  It is undisputed that while

United Rentals may have interviewed three males for the position of Assistant Branch

Manager, the position was left unfilled.  (Sandvik Dep. Tr. at 78-79.)  Although Ms. Sandvik

asserts that the reason the three men were not promoted was "[b]ecause [she] was already

performing the duties of Assistant Branch Manager" (Mem. in Opp'n at 10), she has not

presented sufficient evidence demonstrating that she, in fact, performed such duties.  See

supra Analysis Part A.

     Moreover, Ms. Sandvik has offered no evidence from which one could determine

whether she was similarly situated to the three male interviewees.  In this regard, the record

is "wholly insufficient" to properly compare their qualifications and experience with hers.

See Younts, 370 F.3d at 754.  As such, Ms. Sandvik cannot establish a discriminatory

failure-to-promote.  Accordingly, the Court will grant United Rentals's Motion and will

dismiss Ms. Sandvik's failure-to-promote claim.[9]

### C.     Failure-to-Reclassify

Ms. Sandvik alleges that United Rentals discriminated against her by failing to

reclassify her to an E7 salary band.  (See Mem. in Opp'n at 20-22, 31.)  She states, "Once

[I] was denied the job title to Assistant Branch [M]anager, [I] was denied entrance to the

much more favorable salary range for E7 grade employees."  (Id. at 31.)  As with her wage

discrimination and failure-to-promote claims, she argues she was entitled to

reclassification because she "was doing the job of Assistant Branch Manager."  (Id. at 20.)

Despite her argument that she deserved reclassification because she was doing the

job of an Assistant Branch Manager, the Court has previously determined she has failed to

provide sufficient evidence to support her contention.  See supra Analysis Part A.

Additionally, to the extent she asserts she should have been reclassified to the E7 level as a

promotion, the Court has also previously determined that she has failed to show that

similarly situated men were promoted instead.  See supra Analysis Part B.

Nevertheless, relying on Orahood v. Board of Trustees, 645 F.2d 651 (8th Cir.

1981), Ms. Sandvik contends that she has established a prima facie case of disparate

_____

[9] Ms. Sandvik argues that Mr. Pringle's stated reasons for not promoting her were
pretexts for discrimination because he gave conflicting reasons and made sexist comments.
(See Mem. in Opp'n at 20-26.)  These arguments are irrelevant, however, because Ms.
Sandvik has not established a prima facie case.  Only after a prima facie case is established
does the issue of pretext come into play.  See Kratzer, 398 F.3d at 1046.

treatment.  (Mem. in Opp'n at 20-21.)  In <u>Orahood</u>, the plaintiff alleged that she was denied

a job reclassification and salary increase, which had been recommended by her supervisors,

because of her sex.  645 F.2d at 655.  As part of her prima facie case, the plaintiff offered

statistical data demonstrating a pattern and practice of the defendant paying women less

than men in similar positions.  <u>Id.</u> at 655-56.  The Eighth Circuit, after determining that the

plaintiff's disparate treatment claim "does not fit neatly into the requirements for a prima

facie case as established in <u>McDonnell</u> <u>Douglas</u>," observed that "generally, plaintiff can

establish a prima facie case by showing actions taken by the employer from which one can

infer, if such actions remain unexplained, that it is more likely than not that such actions

were based on discriminatory criterion illegal under [Title VII]."  <u>Id.</u> at 656 (citations and

internal quotations omitted).  Under this standard, the Eighth Circuit concluded that the

plaintiff had established a prima facie case of discrimination based on the statistical data

she presented and her supervisors' recommendations that she be reclassified.  <u>Id.</u>

    The Court finds that Ms. Sandvik has not established a prima facie case under the

standard applied in <u>Orahood</u>.  In the Court's view, Ms. Sandvik's failure-to-reclassify claim

differs in no material way from her claim that she was not paid for doing E7 grade work, or

from her claim that she was not promoted to an E7 grade position.  On both of these claims,

she has failed to demonstrate a prima facie case of discrimination.  <u>See</u> <u>supra</u> Analysis

Parts A & B.  Because the claims are not materially different, the same result also applies

to her failure-to-reclassify claim.  Furthermore, unlike <u>Orahood</u> where the plaintiff's

evidence of statistical data was instrumental in establishing her prima facie case, Ms.

18

Sandvik has produced no statistical data establishing a pattern or practice of discrimination by United Rentals.  Accordingly, the Court concludes that Ms. Sandvik has not shown a prima facie case of discrimination with regard to not being reclassified.

      **D.**      **Retaliation**

      Finally, Ms. Sandvik alleges that shortly after she complained about wage discrimination in her July 28, 2003, memorandum, Mr. Pringle retaliated against her by putting "secret notes" in her personnel file and by denying her a promotion or reclassification.  (See Mem. in Opp'n at 1, 20, 26.)  Title VII prohibits an employer from taking any adverse employment action against an employee who has opposed any practice made an unlawful employment practice under Title VII.  42 U.S.C. § 2000e-3(a).  The MHRA similarly prohibits an employer from intentionally engaging in any "reprisal" against someone who opposed a practice forbidden by the MHRA.  Minn. Stat. § 363A.15.  "Reprisal" is defined as "any form of intimidation, retaliation or harassment."  Id.

      To establish a prima facie case of retaliation or reprisal, Ms. Sandvik must show that (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between her protected conduct and the adverse employment action.  Sowell, 251 F.3d at 684; Fletcher v. St. Paul Pioneer Press, 589 N.W.2d 96, 101-02 (Minn. 1999).  With respect to the second element, to be an adverse employment action, the action must have a "materially adverse impact" on the terms or conditions of employment.  Sowell, 251 F.3d at 684.  Changes in the terms, duties, or working conditions that cause no materially significant disadvantage are not considered adverse employment

actions.  See id.  Said differently, "Employment actions which do not result in changes in

pay, benefits, seniority, or responsibility are insufficient to sustain a retaliation claim."

Horn, 362 F.3d at 1046 (citation and internal quotations omitted).

Ms. Sandvik has failed to establish a prima facie case because she has not shown

that she experienced an adverse employment action.  She argues that Mr. Pringle placed

"secret notes" in her personnel file, which said that she was "disruptive" and had a "negative

attitude."  (Pringle Dep. Tr. Exs. 6, 7.)  But there is no evidence that Mr. Pringle's notes

adversely altered Ms. Sandvik's employment status.  Rather, she retained her job with no

changes in pay, benefits, seniority, or responsibility, and has since been transferred to the

Rogers branch where she finds her working conditions improved.[10]  (Sandvik Dep. Tr. at 58,

84.)  As such, there is no evidence that the notes caused a materially significant

disadvantage that would support a retaliation claim.  See Horn, 362 F.3d at 1046 (finding

negative notes in personnel file not an adverse employment action where the notes did not

result in any materially significant disadvantage to the employee); Tademe v. St. Cloud State

Univ., 328 F.3d 982, 992 (8th Cir. 2003) (finding negative "papering" of personnel file not

an adverse employment action where employer took no adverse action because of the

accusations).

While Ms. Sandvik also argues that she was not promoted or reclassified to

Assistant Sales Manager in retaliation for her complaints, she has not established a prima

---

[10] Ms. Sandvik does not allege that her transfer was retaliatory.

20

facie case of a discriminatory failure-to-promote or failure-to-reclassify.  See supra

Analysis Parts B & C.  Moreover, by remaining in her same Senior Sales Coordinator

position, she has offered no evidence of "changes in pay, benefits, seniority, or

responsibility" that are the hallmarks of a retaliation claim.  See Horn, 362 F.3d at 1046

(emphasis added, citations omitted); see also Tademe, 328 F.3d at 992 (holding that

decision not to raise pay was not an adverse employment action because salary was not

decreased or otherwise diminished).  Furthermore, the facts in this case do not, as Ms.

Sandvik asserts, rise to the level of that recounted in Kim v. Nash Finch Co., 123 F.3d

1046, 1060 (8th Cir. 1997), where the Eighth Circuit found an adverse employment action

existed based upon the employer's "systematic[]" retaliation against an employee by

reducing his duties, giving him lower performance evaluations, requiring special remedial

training, and papering his personnel file with negative reports.  Id. at 1060.

There is one remaining issue that the Court would be remiss not to address.  In its

opening memorandum, United Rentals noted that Ms. Sandvik, during her deposition,

identified several other actions that occurred after she wrote her July 28th memorandum:

(1) she was stripped of her job duties; (2) she was humiliated; (3) she was denied overtime;

and (4) she did not receive an incentive bonus for September 2003.  (See Mem. in Supp. at

21 (citing Sandvik Dep Tr. at 59, 62, 73, 77).)  United Rentals moved for summary

judgment on each of these alleged actions.  (See id. at 21-24.)  However, in her opposition

memorandum, Ms. Sandvik did not address United Rental's arguments and did not argue that

these other actions were taken in retaliation for her complaints about discrimination.

Indeed, Ms. Sandvik is very specific as to how she claims she was retaliated against—secret notes were put in her file and she was denied promotion or reclassification. For example, on page one of her memorandum, she states, "Shortly after [I] complained via an e-mail to managers at United Rentals that [I] was being discriminated against, [my] supervisor <u>retaliated</u> against [me] by putting <u>secret</u> <u>notes</u> in [my] file and denying [me] a <u>promotion</u> for which he had recommended [] only a few weeks earlier." (Emphasis added). On page 20, she similarly states, "In the present case, . . . [I] was denied <u>promotion</u> or <u>reclassification</u> in <u>retaliation</u> for [my] complaints about not being reclassified and pay discrimination." (Emphasis added). And on page 26, under the heading of "Reprisal," she states, "Here it is stipulated that [I] complained electronically about pay discrimination, that [I] was written up with <u>secret notes</u> by Pringle afterwards, and, most significantly, [my] <u>promotion</u> or <u>reclassification</u> which Pringle had recommended only a few weeks earlier never went through." (Emphasis added). Conspicuously absent is any argument that she was retaliated against in any other way. In light of her arguments, the Court is of the view that Ms. Sandvik has made a knowing and conscious decision to forgo any other retaliation allegations.[11] Accordingly, the Court will grant United Rentals's Motion and will dismiss Ms. Sandvik's retaliation and reprisal claims.

---

[11] With respect to Ms. Sandvik's testimony that she was stripped of all her job duties, her unsubstantiated, conclusory allegation is insufficient to withstand summary judgment. <u>See</u> <u>Helfter v. United Parcel Serv., Inc.</u>, 115 F.3d 613, 616 (8th Cir. 1997).

**Conclusion**

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS**

**ORDERED** that Defendant United Rentals (North America) Inc.'s Motion for Summary

Judgment (Doc. No. 10) is **GRANTED** and Plaintiff Terry Sandvik's Complaint (Doc.

No. 1) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: June 2, 2005                                    s/Richard H. Kyle
                                                       RICHARD H. KYLE
                                                       United States District Judge

23